UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
P&J EMPIRE AUTO, INC, d/b/a PAT'S :
TOWING, :
                 Plaintiff, : **OPINION AND ORDER**
:
v. : 17 CV 2234 (VB)
:
TOWN OF NEWBURGH, NEW YORK; :
BRUCE CAMPBELL, Chief of the Town of :
Newburgh Police Department; and DOUGLAS :
SCOTT, Detective, Town of Newburgh Police :
Department, :
                 Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff P&J Empire Auto, Inc., d/b/a Pat's Towing, brings this action under 42 U.S.C. § 1983, alleging defendants Town of Newburgh, Bruce Campbell, Chief of the Town of Newburgh Police Department, and Detective Douglas Scott retaliated against it for exercising its First Amendment right to free speech.

    Before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6). (Doc. #26).

    For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

    In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

    Plaintiff is a towing company, which has been in continuous operation since 1988.

1

Plaintiff has locations in the Town of Newburgh, Middletown, New Windsor, and Walden.

Generally, when a motorist calls a municipality or police department in need of a tow truck, the municipality refers to a so-called "tow list," and calls the companies on the list on a rotating basis. (Compl. ¶ 10).

Plaintiff is on such tow lists for the Town of Cornwall, Town of New Windsor, City of Newburgh, and Town of Mt. Hope. Plaintiff is also on the New York State Police's tow lists in Newburgh and Montgomery.

All towing within the Town of Newburgh is regulated by Chapter 170 of the Town of Newburgh Code. Section 170-4 requires tow companies to have a license from the Town Clerk in order to be included on the rotating tow list. Section 170-15 provides that annual license renewals will be granted so long as the towing company is in compliance with Chapter 170, namely refraining from the enumerated causes for denial listed in Section 170-18.

Plaintiff had been on the Town of Newburgh's rotating tow list for twenty years, until August 15, 2016, when the Town placed plaintiff under investigation and thereafter refused to renew plaintiff's tow license.

Defendant Campbell became a City of Newburgh police officer in August 1995 and a Town of Newburgh police officer in May 2012.

In January 2016, plaintiff gave a statement[1] to the City of Newburgh Police Department as part of an internal investigation of allegations that a local towing company "had been unlawfully influencing certain City police officers to violate the provisions of the City's towing policies and procedures." (Compl. ¶ 13). Following the investigation, one City of Newburgh

---

[1] Curiously, and awkwardly, the complaint fails to identify the person or persons who made this statement or who interacted with the Town or its personnel on behalf of plaintiff.

police officer was suspended and another was terminated.

On April 4, 2016, Campbell became chief of the Town Police Department. In that role, Campbell allegedly had final authority for the enforcement of the provisions of the Town of Newburgh Code Chapter 170, including license renewal for the tow list.

On August 5, 2016, plaintiff timely filed an application to renew its Town towing license. About a week later, defendant Scott—a detective in the Town's police department—told plaintiff that, pending an investigation, plaintiff's license would not be renewed. Without the license, plaintiff would not be on the Town's towing list. Scott did not tell plaintiff the nature of the investigation.

On August 15, 2016, plaintiff called Detective Scott to ask him when plaintiff's trucks would be inspected as part of the license renewal. Scott told plaintiff it was under investigation for overcharging, and plaintiff would not be put on the tow list until the investigation was complete.

On or about August 17, 2016, Scott came to plaintiff's place of business in Newburgh and asked for plaintiff's towing log. Scott told plaintiff he would make a copy of the log and return the original. According to the complaint, "Scott also indicated to Plaintiff that he thought the investigation was 'political.'" (Compl. ¶ 18).

On September 14, 2016, plaintiff telephoned Chief Campbell to find out the status of the Town's investigation and license renewal. Campbell reiterated that plaintiff would not be put on the tow list until the investigation was over.

On September 20, 2016, plaintiff telephoned the Town Supervisor, Gil Piaquadio, and told him plaintiff thought Campbell's conduct was illegal. According to the complaint, Mr. Piaquadio "agreed with Plaintiff and said he had told Campbell to hurry up the investigation."

(Compl. ¶ 21).

On November 16, 2016, plaintiff telephoned Detective Scott to ask about the investigation and license renewal. Scott told plaintiff "it was not up to him and that Plaintiff should speak with Campbell." (Compl. ¶ 23). Plaintiff then left several telephone messages for Chief Campbell, who did not return the calls.

On December 19, 2016, plaintiff filed two FOIL requests with the Town. The first request sought:

> [a]ny and all lists or other documents setting forth towing operators eligible to be called to police initiated tow calls in the Town of Newburgh; any and all policies and procedures established by the Town of Newburgh Police Dept. for the establishment of lists or other documents setting forth towing operators eligible to be called to police initiated tows in the Town of Newburgh.

(Compl. ¶ 24). The second FOIL request asked the Town to produce:

> [a]ny and all documents or memoranda issued by the Town of Newburgh Police Dept. removing Pat's Towing or rejecting Pat's Towing's application and list all tows initiated by the Town of Newburgh Police Dept. from January 1, 2016 to present and whom towed by.

(Id.). Plaintiff alleges the Town has returned plaintiff's original tow log and license renewal application, but has otherwise failed to provide the requested documents.

In late December 2016, Detective Scott told plaintiff he thought there were enough tow companies on the Town's tow list, and the Town would not be adding any more companies to the list. Plaintiff alleges two additional tow companies were placed on the list following Scott's statement that none would be added.

As of March 29, 2017, defendants had not renewed plaintiff's license, placed plaintiff on the tow list, or provided plaintiff information regarding the alleged overcharge investigation.

**DISCUSSION**

I.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d at 134).

II.     First Amendment Claim

Defendants argue plaintiff has not plausibly alleged a Section 1983 claim for First Amendment retaliation primarily because (i) plaintiff fails to plead with specificity the alleged protected speech; and (ii) plaintiff fails to allege sufficient causation between the alleged speech and retaliatory act.

The Court disagrees.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "(i) he has an interest protected by the First Amendment; (ii) defendants' actions were motivated or substantially caused by his exercise of that right; and (iii) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (citation omitted).

First, plaintiff has sufficiently pleaded the statements made to the City of Newburgh Police Department were protected by the First Amendment. For purposes of First Amendment retaliation claims, towing companies listed on a municipal tow list are afforded the same protections as public employees. See O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 720–21 (1996); see also Bd. of Cty. Comm'rs v. Umbehr, 518 U.S. 668, 684–85 (1996). For a public employee to plead a claim for First Amendment retaliation, the employee must plead facts to show he "spoke as a citizen on a matter of public concern." Garcetti v. Ceballos,

6

547 U.S. 410, 418 (2006). "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community." Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).

Here, plaintiff provided information about corrupt activities of City of Newburgh police officers in connection with the enforcement of towing policies and procedures. Plaintiff's statement was not, as defendants suggest, a pure statement in furtherance of plaintiff's commercial interests. Rather, the corruption of police officers is a matter of public concern not otherwise within the scope of plaintiff's employment, even if plaintiff gave the statement in his own self-interest. See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist., 411 F.3d 306, 313 (2d Cir. 2005).

Second, plaintiff has adequately alleged defendants' conduct "was motivated by or substantially caused by [plaintiff's] exercise of free speech." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) (citations omitted). A defendant's retaliatory motive can be established by circumstantial evidence. Hartman v. Moore, 547 U.S. 250, 261 (2006). "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Gagliardi v. Vill. of Pawling, 18 F.3d at 195.

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). There is no bright-line rule in this Circuit for what constitutes "close in time"; some courts have found as little as three months too long to infer retaliatory motive, but others have found gaps as long as eight months are close enough in time to infer retaliatory motive.

7

Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554–55 (2d Cir. 2001) (collecting cases).

Here, plaintiff has met its burden to plead retaliatory motive as to defendant Campbell only.

    A.    Chief Campbell

Even though the alleged retaliation occurred seven months after plaintiff's protected speech, and four months after Campbell became the Town police chief, plaintiff pleaded a sufficient nexus between the statement and the alleged retaliation. Although it is a close call, with all inferences made in favor of the non-moving party, the timing of the alleged harassment, coupled with other statements, satisfies this burden.

Chief Campbell had reason to react negatively to plaintiff's alleged speech. Campbell was a City of Newburgh police officer from 1995 to 2012. Plaintiff's complaint draws the reasonable inference that during Campbell's tenure working for the City of Newburgh, he came to know and perhaps befriend his colleagues in the department. Therefore, when plaintiff's statement to the City of Newburgh Police Department caused Campbell's former colleagues to be suspended and terminated in January 2016, Campbell plausibly knew of the circumstances of the disciplinary actions and was unhappy about it.

Plaintiff has sufficiently pleaded that Chief Campbell retaliated against it at his first opportunity. License renewal occurs yearly, with applications submitted ten days before the prior license expires. Campbell became chief on April 4, 2016. Therefore, when plaintiff was informed of an issue with the license renewal in August 2016, it was the first time Chief Campbell had the opportunity to affect plaintiff's placement on the tow list.

Plaintiff has pleaded additional facts to imply the license investigation was not routine.

At the time of the investigation, plaintiff had been on the tow list for twenty years without incident. On August 17, 2016, Detective Scott told plaintiff he thought the investigation was "political." (Compl. ¶ 18). The Town Supervisor, Gil Piaquadio, agreed that he thought defendants' investigation was "illegal." (Compl. ¶ 21). When plaintiff tried to contact Supervisor Piaquadio thereafter, Piaquadio did not respond to plaintiff's calls. The Town did not respond meaningfully to plaintiff's FOIL requests for information or documents. Even though Detective Scott told plaintiff the Town would not be adding additional companies to the tow list, two additional towing companies were added after that conversation.

Accordingly, the timing of plaintiff's removal from the tow list, coupled with statements and circumstances during the investigation, create a reasonable inference of Chief Campbell's retaliatory motive at this early stage in the litigation.

Plaintiff must also plausibly plead an injury. Public employees must show the protected speech resulted in an adverse employment action. Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011) (citing Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)). Removal from a municipal tow list is an adverse employment action. See O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 723 (1996).

Although defendants are correct that inclusion on a municipal rotating tow list is not a constitutionally protected right, that has no bearing here. Plaintiff asserts only a First Amendment retaliation claim, not a due process claim.[2]

Accordingly, plaintiff has adequately alleged a First Amendment retaliation claim against

---

2    Plaintiff asserts in its opposition to the motion that its removal from the tow list was "arbitrary and capricious." (Opp. at 8). The Court addresses only the cause of action pleaded on the face of the complaint, which is First Amendment retaliation, and does not impute a claim for review of any administrative determination under an arbitrary and capricious standard.

9

Campbell.

B. Detective Scott

Plaintiff has not, however, pleaded sufficient facts to show Detective Scott had any retaliatory motive in carrying out the investigation. There are no allegations in the complaint to suggest Scott was doing anything other than completing an investigation at the direction of his supervisor, Chief Campbell. To that end, Scott told plaintiff, "[the license renewal] was not up to him and that Plaintiff should speak with Campbell." (Compl. ¶ 23).

Accordingly, plaintiff fails to plead facts sufficient to state a claim of First Amendment retaliation against Scott.

III. Monell Claim

Defendants argue plaintiff's claim against the Town of Newburgh fails because the Town is not vicariously liable for the alleged retaliatory acts of Campbell.

The Court agrees.

"Local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted); Gleason v. Scoppetta, 566 F. App'x 65, 70 (2d Cir. 2014). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978).

Here, plaintiff fails to identify any official policy or custom of the Town that led to the alleged retaliation. The mere fact that a municipal employee performs actions in violation of

constitutionally protected rights does not render those actions a policy or custom of the municipal government.

Accordingly, plaintiff's claims against the Town of Newburgh are dismissed.

VI.   Qualified Immunity

Chief Campbell argues in the alternative that he is entitled to qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

During the time period described in the complaint, it was clearly established law that retaliation for protected speech violates the Constitution. Moreover, without the benefit of a fuller factual record, the Court cannot conclude Campbell was objectively reasonable to believe his actions did not violate such clearly established law.

Accordingly, dismissal on the basis of qualified immunity is not warranted at this stage.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's First Amendment retaliation claim against the Town of Newburgh and Detective Scott is dismissed.

Plaintiff's First Amendment retaliation claim against Chief Campbell will proceed.

The Clerk is instructed to terminate the motion (Doc. #26), and terminate defendants Town of Newburgh, New York, and Douglas Scott.

Dated: March 8, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge